IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN BRANDENBURG | § | |
| | § | |
| VS. | § | CA No. _____ |
| | § | |
| THE LINCOLN NATIONAL | § | |
| INSURANCE COMPANY | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

JOHN BRANDENBURG, Plaintiff, files this Original Complaint asserting causes of action in law and equity for relief against The Lincoln National Insurance Company, Defendant.

**I.
PARTIES**

1. Plaintiff, John Brandenburg ("Brandenburg"), is a resident citizen of Mesa, Arizona.

2. Defendant, The Lincoln National Insurance Company ("Lincoln National"), is a domestic or foreign insurance company licensed to do business and doing business in the state of Texas, and can be served with process by serving its registered agent, Corporation Service Company, 211 East 7th St., Suite 620, Austin, TX 78701, or wherever it may be found.

**II.
JURISDICTION AND VENUE**

3. This action against Lincoln National arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq*. This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

4. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Lincoln National maintains business activity in and may be found in this district.

5. Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration, at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

## III.
## STATEMENT OF FACTS

6. John Brandenburg was hired by SelectTech Services Corporation in 2007 as an Engineer Tech II. His job included carpentry work, plumbing, and various work orders for whatever needed to be done at Wright Patterson Air Force Base, Ohio. Most of his work involved labor intensive skilled tasks. As a full time employee, Mr. Brandenburg was enrolled in SelectTech's employee welfare benefit Plan that included benefits for long term disability (LTD).

7. SelectTech's LTD Plan was part of the company's Group Insurance Policy issued by Lincoln National. The LTD Policy Number was 00001007354700000 (the "Policy"). The Policy provided income protection if the covered employee became disabled as a result of injury or sickness. Mr. Brandenburg was an eligible employee.

8. SelectTech was the Plan Sponsor and Plan Administrator.

9. Lincoln National was the Insurer and Claims Administrator for the Plan.

10. In 2012, Mr. Brandenburg suffered an aortic aneurysm. He stopped working on May 10, 2012 and underwent emergency surgery that night.

11. Mr. Brandenburg promptly applied for LTD benefits.

12. On August 21, 2012, Mr. Brandenburg called Lincoln National. Because his breathing was labored, he was forced to give the phone to his daughter. His daughter advised that he had been discharged from a nursing facility eight days earlier. She also advised that Mr. Brandenburg had suffered two strokes and had left sided weakness of the body. Lincoln National advised that it would approve the LTD claim.

13. On December 6, 2012, Mr. Brandenburg notified Lincoln National that he had been approved for Social Security Disability Income ("SSDI") benefits.

14. On April 19, 2013, Mr. Brandenburg advised Lincoln National that he had been discharged from the hospital ten days after a blood vessel in his head burst and caused bleeding in his brain. His doctor did not provide a date when he would be able to return to work.

15. In October 2013, Lincoln National noted that Mr. Brandenburg had suffered two strokes and bleeding in his brain, plus an aortic aneurysm. He was also reported to have weakness of the left side of his body and was, at some point, wheelchair bound.

16. On February 24, 2014, Mr. Brandenburg underwent a thoracoabdominal aneurysm repair[1]. In March 2014, he had an open repair of a brachial pseudoaneurysm[2]. On July 22, 2014, Mr. Brandenburg's vascular surgeon performed an open resection of the infrarenal aortic aneurysm with a tube graft. All of these procedures took place

---

[1] A thoracoabdominal aortic aneurysm is bulging and weakness in the aortic wall that extends from the chest to the abdomen.

[2] A pseudoaneurysm is a collection of blood that forms between the two outer layers of an artery. It is usually caused by an injury to the vessel, which bleeds and forms a space between the above two layers.

at the Arizona Heart Institute.

17. Lincoln National's policy defined disability as, among other things, a condition in which the beneficiary is "unable to perform each of the main duties of his occupation" during the first 24 months of disability. This provision is commonly known as "own occupation" disability. After the first 24 months of disability, disability is defined as being "unable to perform each of the main duties of any occupation which his training, education, or experience will reasonably allow". This is commonly known as "any occupation" disability.

18. On August 9, 2014, the Policy's disability definition changed from "own occupation" to "any occupation". Lincoln National continued to pay Mr. Brandenburg's LTD claim.

19. In March 2015, Mr. Brandenburg reported severe back pain that radiated to his legs, causing him difficulty with walking, standing, and sitting. A month later, he reported leg pain when standing more than ten minutes.

20. In September 2015, Mr. Brandenburg was referred to the Arizona Pain and Spine Institute for treatment of his ongoing complaints of pain.

21. In September or October 2015, SelectTech informed Lincoln National that it would transfer its insurance policy to another insurance company.

22. On October 20, 2015, Lincoln National terminated Mr. Brandenburg's LTD claim, concluding that he was no longer totally disabled because he could work in sedentary occupations. It also dismissed his complaints of severe back and leg pain because they were "not explained by vascular issues".

23. On February 25, 2016, Mr. Brandenburg appealed Lincoln National's termination of his claim. He provided additional evidence and medical records supporting his LTD claim.

24. On May 27, 2016, Lincoln National denied Mr. Brandenburg's appeal.

25. In denying Mr. Brandenburg's appeal, Lincoln National relied on a medical record review by Dr. Evelyn Balogun of Reliable Review Services ("RRS"). Dr. Balogun believed that Mr. Brandenburg should not perform medium or heavy physical tasks. However, she stated that "individuals with chronic low back pain attributed to degenerative disc disease can generally resume light physical demands within 14 to 28 days after symptoms onset". Dr. Balogun did not take into account Mr. Brandenburg's ongoing pain that caused difficulty with walking, standing, and sitting. She thus determined that he could perform a sedentary occupation.

26. However, Dr. Balogun lacked the training, education, or experience to reach those conclusions. She has no medical license in Arizona or Texas.

27. Dr. Balogun's background reveals a history of biased medical record reviews for Lincoln National. For example, in 2012, she reviewed James Matson's medical records. In that review, Dr. Balogun ignored his complaints of pain when considering if he was able to work. In 2014, Dr. Balogun reviewed Shelley Boockholdt's medical records. In that review, Dr. Balogun misclassified Ms. Boockholdt's occupation and ignored her complaints of spinal pain. In both claims, Lincoln National relied on Dr. Balogun's conclusions to determine that the claimant was not disabled.

28. Dr. Balogun's biased analysis has been criticized by at least court. In *Caudill v. Hartford Life & Accident Ins. Co.*, 2014 U.S. Dist. LEXIS 136127 (S.D. Ohio Sept. 26,

5

2014), the court concluded that Dr. Balogun "implicitly discounted the credibility of plaintiff's complaints by questioning whetheru there was a mental or physical cause for plaintiff's self reported symptoms". The court noted that Dr. Balogun's subjective credibility determinations factored into its determination that Hartford's decision to deny the plaintiff's claim was arbitrary and capricious.

29. Dr. Balogun's history reveals her bias. Lincoln National knew of this bias but still persisted in relying on Dr. Balogun's opinions. On information and belief, Lincoln National retained RRS to review Mr. Brandenburg's claim for that very purpose. It has retained RRS to perform medical record reviews for a number of years.

30. RRS was started as Reed Review Services in 2003. Its CEO, Jim Franklin, has served in that role since its inception. RRS serves insurance companies, third party plan administrators, and employers. It relies on the client to identify the physician speciality area it wants for a medical record review. However, not all of its medical record reviewers are in active medical practice.

31. RRS reviews at least 60 to 70 cases per month. It is believed to receive millions of dollars in annual income from insurance company clients alone. On information and belief, Lincoln National has paid RRS at least several hundred thousand dollars since 2014 to review its LTD claims and medical records.

32. The RRS medical record reviewers do not physically sign the report. Instead, they use electronic signatures. However, the report is sent back to the RRS client after the document is signed. The medical record reviewer does not see the final version of the report. This pattern of conduct with RRS evidences a biased approach and treatment of Lincoln National's disability claims, including this one.

33. Mr. Brandenburg submitted a second appeal, along with additional evidence and medical records, to Lincoln National on December 29, 2016. He submitted additional evidence on January 10, 2017.

34. On February 10, 2017, Lincoln National denied Mr. Brandenburg's second appeal. In doing so, Lincoln National concluded that he would be able to work in other occupations that involved sedentary work.

35. Having exhausted his administrative remedies, John Brandenburg brings this action to recover the LTD benefits promised in the Policy and the Plan.

## IV.
## CLAIMS & CAUSE OF ACTION

36. Lincoln National is an insurer and provided LTD coverage to Mr. Brandenburg in accordance with the terms of the Policy. That coverage included LTD benefits arising out of his disability.

37. The Policy, as part of the SelectTech Group Long Term Disability Plan, is governed by ERISA. 29 U.S.C. §1001, *et. seq.* Lincoln National is the Claims Administrator and a named fiduciary under the Plan.

38. As a Plan fiduciary, Lincoln National is obligated to handle claims for the benefit of the Plan and Plan beneficiaries, and to deliver the benefits promised in the Plan. It is also obligated as a fiduciary to conduct its investigation of a claim in a fair, objective and evenhanded manner.

39. Lincoln National's adjustment or "adjudication" of the Brandenburg claim was instead biased and outcome oriented. This was in part reflected by its termination of the Brandenburg claim, even after being presented with evidence of his ongoing

disability. It was also reflected in Lincoln National's unreasonable reliance on reviewers who lacked the training, education, and experience to objectively review his claim. It was also reflected in its selection of RRS to review this claim.

40. Lincoln National's interpretation of the Policy and the terms of the Policy was not legally correct. It was also contrary to a plain reading of the Policy language.

41. Lincoln National's interpretation of the Policy and Policy language was contrary to that of the average Plan participant and policyholder. It was contrary to the common and ordinary usage of the Policy terms. Alternatively, the Policy language upon which Lincoln National based its denial decision was ambiguous. The ambiguous nature of those terms require those terms be construed against Lincoln National and in favor of coverage for the beneficiary.

42. Lincoln National's denial was made without substantial supporting evidence. Its decision to deny the Brandenburg claim was instead based upon rank speculation and guesswork. Lincoln National's denial decision was *de novo* wrong. Alternatively, it was arbitrary and capricious.

43. On information and belief, Lincoln National's denial of the Brandenburg claim was not the result of a honest, fair, or objective factual investigation. It was instead motivated by Lincoln National's desire for financial gain, evidenced by policies, procedures, and practices to profit from the delay in payment or denial of claims. It may also be found in various incentive programs for claims and claims management personnel and in various management directives. Those directives emanate from its corporate offices. Its financial gain is also reflected in the high ROE Lincoln National gains from retained benefit funds.

44. At all material times, Lincoln National was acting on behalf of the Plan and in its own capacity as the insurer and Claims Administrator.

45. Lincoln National's denial of the Brandenburg claim breached the terms of the Policy and the Plan. Its breach was in violation of 29 U.S.C. §1132(a)(1), entitling Brandenburg to the LTD Policy to which he is entitled, along with pre-judgment interest on the amounts due and unpaid, all for which Mr. Brandenburg now sues.

## V.
## STANDARD OF REVIEW

46. The default standard of review for denial of a benefit claim is *de novo*. Where the Plan or Policy confers discretion on the Claims Administrator, an abuse of discretion standard of review may apply.

47. The Policy may contain a discretionary clause or language Lincoln National may construe as affording it discretion to determine eligibility for benefits, to interpret the terms of the Policy, and determine the facts. Lincoln National's denial under this standard of review, if any, was an abuse of discretion. It was arbitrary and capricious.

48. If discretion applies, the Court should afford Lincoln National less deference in light of its financial conflict of interest. Lincoln National's conflict of interest is both structural and actual. Its structural conflict results from its dual role as the adjudicator of the Brandenburg benefit claim and as the potential payor of that claim.

49. Lincoln National's actual financial conflict is revealed in the policies, practices, and procedures influencing and motivating claim delays and denials for financial gain. Lincoln National's financial conflict is also revealed in the high ROE gained from the

        delay in payment or denial of claims.

50. Lincoln National's financial conflict is further revealed in its termination of Mr. Brandenburg's claim shortly after learning that SelectTech would not renew its insurance policy with Lincoln National. Put another way, Lincoln National no longer had a reason to keep Mr. Brandenburg "on claim".

51. Each of these grounds, on information and belief, was a motive to deny the Brandenburg claim, along with the delay in payment or denial of claims of other Lincoln National policyholders and claimants, including other SelectTech employees.

52. Lincoln National, in light of its financial conflict, should be accorded little or no discretion in its claims decision.

53. Alternatively, the standard of review of this claim should be *de novo,* affording Lincoln National no discretion in its interpretation of the terms of the Policy and Plan, nor in its factual determinations.

54. The Policy was delivered in Texas. Accordingly, Texas law applies under the ERISA savings clause. Texas has banned the use of discretionary clauses in insurance policies issued in this state. TEX. INS. CODE §1701.062; 28 Tex. ADMIN. CODE §3.1202. Accordingly, review of the Brandenburg claim and Lincoln National's claims handling conduct, both in its interpretation of terms of the Policy and the Plan, and in its determination of the facts, should be *de novo*.

## VI.
## REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

55. Brandenburg requests, in addition to the amount of benefits withheld, prejudgment

interest on any such award. He is entitled to prejudgment interest as additional compensation, and pursuant to Texas Insurance Code Texas Insurance Code, Sec. 1103.104, or on principles of equity.

56. Lincoln National's policy does not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Sec. 1103.104(c) of the Texas Insurance Code. Brandenburg thus requests an accounting in order to determine the amount earned on the funds that should have rightfully been paid to him, and in accordance with Insurance Code Sec. 1103.104(c).

## VII.
## CLAIM FOR ATTORNEYS FEES & COSTS

57. Brandenburg seeks an award of his reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. He is entitled to recover those fees, together with his costs of court, pursuant to 29 U.S.C. §1132(g).

## VIII.
## PRAYER

58. John Brandenburg, Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in his favor and against Defendant The Lincoln National Insurance Company, and issue judgment against Defendant as follows:

   a.   Pay to Mr. Brandenburg all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon and as allowed by law and equitable principles;

   b.   Pay all reasonable attorney's fees incurred and to be incurred by Mr. Brandenburg in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter;

c.  All such other relief, whether at law or in equity, to which Mr. Brandenburg may show himself justly entitled.

Respectfully submitted,

By:_____
James C. Plummer, TBA #16075700
Federal I.D. No. 3692
Amar Raval, TBA #24046682
S.D. No. 619209
Berg Plummer Johnson & Raval LLP
4203 Montrose Blvd., Suite 260
Houston, Texas 77006
(713) 526-0200
(832) 615-2665 (Fax)
Jplummer@bergplummer.com
Araval@bergplummer.com

ATTORNEYS FOR PLAINTIFF